IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KELLY LYNNE LEA,<br>Plaintiff, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. 4:21-CV-988-P |
| | § | |
| COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION,<br>Defendant. | §<br>§<br>§ | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Kelly Lynne Lea ("Lea") filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In October 2017 Lea protectively applied for a period of disability and DIB, alleging that her disability began on October 1, 2002. (Transcript ("Tr.") at 19; *see* Tr. 191-97.) Lea's application was both denied initially and on reconsideration. (Tr. 19; *see* Tr. 101-47.) Lea then requested a hearing before an administrative law judge ("ALJ"). (Tr. 19; *see* Tr. 148, 167-68.) On April 11, 2019, the ALJ held a hearing, and, on January 31, 2020, the ALJ found that Lea was not disabled within the meaning of the SSA. (Tr. 19-28; *see* Tr. 37-100.) Lea then filed

1

a request for review of the ALJ's decision to the Appeals Council. (Tr. 188-89.) On October 7, 2020, the Appeals Council denied Lea's request, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 6-9.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See id.* § 404.1510. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At Step Four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At Step Five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

2

the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUES

In her brief, Lea presents the following issues:

1. Whether new evidence submitted by Lea to the Court after the ALJ and Appeals Council's decisions requires the Court to remand the case to the ALJ;

2. Whether the ALJ failed to properly evaluate the medical opinion of State Agency Medical Consultant Richard Campa, Ph.D. ("SAMC Campa"); and

3. Whether the ALJ improperly substituted her own medical opinion in determining the Plaintiff's RFC.

(Plaintiff's Brief ("Pl.'s Br.") at 9-25.)

## IV. ALJ DECISION

In a decision dated January 31, 2020, the ALJ concluded that Lea was not disabled within the meaning of the SSA. (Tr. 19-28.) At Step One, the ALJ found that Lea had not engaged in substantial gainful activity during the period from her alleged onset date of October 1, 2002 through her date last insured of March 31, 2013. (Tr. 21-22.) At Step Two, the ALJ found that Lea had the following severe impairments: affective disorder, anxiety disorder, and post-traumatic stress disorder ("PTSD"). (Tr. 22.) Next, at Step Three, the ALJ determined that Lea did not have an impairment or combination of impairments that met or was medically equivalent to the severity of one of the listed impairments in the Listing. (Tr. 22-23.) As to Lea's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant was limited to simple and routine tasks, learned by rote and simple instructions, few work place changes, little judgement required, and simple and direct supervision, and no more than incidental contact with the general public, and occasional contact with coworkers and supervisors.

(Tr. 23 (emphasis omitted); *see* Tr. 23-26.)

At Step Four, the ALJ found that Lea had no past relevant work. (Tr. 26.) Subsequently, at Step Five, the ALJ found that there were jobs that existed in significant numbers in the national

economy that Lea could perform based on her age, education, work experience, and RFC. (Tr. 27-28.) Accordingly, the ALJ found that Lea was not disabled as defined in the SSA from October 1, 2002 through March 31, 2013. (Tr. 28.)

## V. DISCUSSION

### A.  New Evidence Submitted to the Court

As to the first issue, Lea attached documents labeled as Exhibits A through F to her brief, claiming that such evidence constitutes new and material evidence that requires the Court to remand her case for consideration of such evidence. (Pl.'s Br. at 9-15.) "When new evidence becomes available after the Secretary's decision and there is reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing 42 U.S.C. § 405(g)); *Latham v. Shalala*, 36 F.3d 483, 483 (5th Cir. 1994)). The Court does not issue factual findings on new medical evidence but is to determine whether to remand for the consideration of newly presented evidence. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). "To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is 'new' and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the original proceedings." *Ripley*, 67 F.3d at 555. To be new, evidence must not be merely cumulative of the evidence already in the administrative record. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). For evidence to be material, it must relate to the time period for which disability benefits were denied and there must be a reasonable probability that the new evidence would change the outcome of the Commissioner's decision. *Ripley*, 67 F.3d at 555; *see Sullivan*, 884 F.2d at 803.

While several of the attachments contain evidence that is merely cumulative of other evidence in the record, Exhibits B, D, and E contain "Functional Disability Assessments"

5

performed by Michael Sullivan, PA-C ("Physician Assistant Sullivan"), Clark Stevens, Ph.D. ("Dr. Stevens") and Chita Mulholland, MA, LPC ("Mulholland"), respectively, that all claim to relate back to the relevant period from the alleged onset date of October 1, 2002 through her date last insured of March 31, 2013.[2] Even assuming that the Functional Disability Assessments are new, material, and have a reasonable probability of changing the outcome of the ALJ's decision, Plaintiff must demonstrate "good cause" for failing to provide this evidence at the original proceedings.

"'[T]o demonstrate good cause, the claimant must provide an excusable explanation for not submitting the records earlier in the proceeding.'" *Whitener v. Colvin*, No. 15-3504, 2017 WL 650443, at *8 (E.D. La. Jan. 19, 2017) (quoting *Dennison v. Astrue*, No. 08-4677, 2010 WL 744935, at *6 (E.D. La. Mar. 1, 2010)). "Good cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record closed but failed to do so without providing sufficient explanation." *Mouser v. Astrue*, 545 F.3d 634, 637 (8th Cir. 2008).

Lea claims that she failed to provide the above-described evidence earlier because she "had been suffering from, and continues to suffer from, severe mental disease" and she "was unrepresented in her disability claim." (Pl.'s Br. at 13.) Lea further asserts that she "did not have any understanding of the concept of insured status" and "did not understand the differences between the concepts of Title II disability insurance benefits and Title XVI supplemental security income benefits." (Pl.'s Br. at 14; *see* Plaintiff's Reply Brief at 3-4.)

---

[2] The Functional Disability Assessment from Physician Assistant Sullivan indicates that it was created on August 19, 2021 but relates to the period of "2000 to present." (Pl.'s Br. at Exhibit ("Ex.") B.) The Functional Disability Assessment from Dr. Stevens indicates that the "Date of Assessment" was August 12, 2021, but further states, "This assessment is true to [Lea's] functioning between 2004 and 2007. (Pl.'s Br. at Ex. D.) The Functional Disability Assessment from Mulholland indicates that it was created on August 5, 2021 but relates to the period of 2002-2012. (Pl.'s Br. at Ex. E.)

6

Plaintiff's arguments, however, do not constitute "good cause" for failing to present this new evidence earlier. To begin with, the fact that Plaintiff obtained an attorney after the administrative proceedings does not constitute good cause for a remand. *See, e.g., Geyen v. Sec'y of Health and Hum. Servs.,* 850 F.2d 263, 264 (5th Cir.1988) (refusing to remand case just because claimant hired "a new lawyer with a new idea"); *Albritton v. Astrue*, No. 3-10-CV-1860-BD, 2012 WL 1019610, at *8 (N.D. Tex. Mar. 27, 2012) ("That plaintiff hired a new lawyer after the denial of his first application for SSI benefits does not constitute 'good cause' for a remand."). In addition, while Plaintiff may suffer from a mental illness and did not fully understand the proceedings, those conditions remained unchanged throughout this proceeding and do not provide a satisfactory reason why Plaintiff could not have obtained an RFC analysis from her doctors prior to the ALJ or Appeal's Councils decisions. *See Albritton*, 2012 WL 1019610, at *8 ("And while plaintiff may be poor and homeless, those conditions remained unchanged throughout this proceeding."). Consequently, under these circumstances, Plaintiff has failed to show "good cause" and a remand is not warranted under section 405(g).

### B. **Medical Opinion of Dr. Campa**

In her brief, Lea also argues that the ALJ erred by failing to properly evaluate the medical opinion of SAMC Campa.[3] (Pl.'s Br. at 15-20.) First, Lea claims that the ALJ, when evaluating the medical findings of the SAMCs, including SAMC Campa, erroneously stated that such opinions were partially persuasive because the evidence received at the hearing level failed to support that the claimant had a severe physical or mental impairment **"prior to the alleged onset**

---

[3] The Court notes that there are two opinions by SAMC Campa in the record. One is related to the reconsideration determination of Lea's SSI claim (Tr. 109-20 (Exhibit 3A), 133 (determining Lea was disabled as to her SSI claim) and the other is related to the reconsideration determination of Lea's DIB claim (Tr. 121-32). Because the ALJ, in his decision, only referenced SAMC Campa's opinion related to the reconsideration of Lea's DIB claim (*see* Tr. 26 (referencing Exhibits 1A (Tr. 101-07; *see also* Tr. 108) and 4A (Tr. 121-32; *see also* Tr. 134)), the Court will only consider this opinion in its analysis. (Tr. 121-32; *see also* Tr. 134.)

7

date." (Pl.'s Br. at 15.) Plaintiff claims that "the relevant inquiry at step two of the sequential evaluation process is not whether Lea had a 'severe physical or mental impairment **prior to the alleged onset date**' . . . of October 1, 2002, but rather whether she had a severe physical or mental impairment prior to the expiration of her Title II insured status on March 31, 2013." (*Id.*) Plaintiff asserts that, thus, "in considering the persuasiveness of the [SAMCs] prior administrative findings, the ALJ focused on an inappropriate time period." (Pl.'s Br. at 16.)

In addition, Lea argues that the ALJ erred in failing to conduct a proper evaluation of SAMC Campa's RFC assessment in which SAMC Campa found that Lea had medically severe impairments and was moderately limited in several categories and markedly limited in several other categories.[4] (Pl.'s Br. at 16-17.) In addition, Lea claims that the ALJ failed to comply with 20 C.F.R. § 404.1520c and evaluate the persuasiveness of SAMC Campa's "prior administrative findings on the effect of Lea's mental impairments." (Pl.'s Br. at 17.) Lea, citing to *Guy v. Commissioner of Social Security*, No. 4:20-cv-01122-O-BP, 2022 WL 1008039, at *3 (N.D. Tex. Mar. 22, 2022), *rec. adopted*, 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022), claims that "merely acknowledging that an opinion was offered, or mere summaries of the evidentiary record 'fall short

---

[4] In assessing Lea's Mental RFC in a Disability Determination Explanation for Lea's DIB claim at the reconsideration level, which is dated June 15, 2018, SAMC Campa opined that Lea was moderately limited in her ability to do the following: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) work in coordination with or in proximity to others without being distracted by them; (5) interact appropriately with the general public; (6) accept instructions and respond appropriately to criticism from supervisors; (7) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (8) travel in unfamiliar places or use public transportation; and (9) set realistic goals or make plans independently of others. (Tr. 129-31.) SAMC Campa also opined that Lea was marked limited in her ability to do the following: (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (4) respond appropriately to changes in the work setting. (Tr. 131.) SAMC Campa further stated that Lea had the severe impairments of: (1) depressive, bipolar, and related disorders; (2) anxiety and obsessive-compulsive disorders; and (3) trauma and stressor-related disorders. (Tr. 126.) As to the paragraph B criteria, SAMC Campa opined that Lea was moderately limited in the following four functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. (Tr. 127.) SAMC Campa ultimately opined that Lea was not disabled, stating that the medical evidence of record was insufficient prior to Lea's date of last insured. (Tr. 128, 131.)

8

of § 1520c's requirements.'" (Pl.'s Br. at 18.) Lea claims that the "ALJ in this case did not even acknowledge [SAMC] Campa's mental RFC assessment, but rather mistakenly concluded that [SAMC] Campa found no severe impairment." (Pl.'s Br. at 18.) Lea asserts that, consequently, "the ALJ did not consider the persuasiveness of [SAMC] Campa's prior administrative medical findings on the effect of Lea's severe mental impairments, or provide any explanation of his consideration of the supportability and consistency factors in relation to SAMC Campa's RFC determination." (Pl.'s Br. at 18-19.) Lea claims that such error requires the Court to remand the case. (Pl.'s Br. at 19-20.)

Several years ago, the Social Security Administration promulgated new rules regarding how the Commissioner is to consider and evaluate medical opinions and prior administrative medical filings in evaluating a claimant's RFC and eliminating the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings. *See* 20 C.F.R. § 404.1527(c)(2) (describing the former "treating physician" rule); *Linda M. v. Comm'r, Soc. Sec. Admin.*, No. 3:21-CV-210-BK, 2022 WL 4125095, at *3 (N.D. Tex. Sept. 8, 2022) ("Because Plaintiff filed for benefits 'on or after March 27, 2017,' the ALJ was required to apply the revised social security regulations."). Under the new rules, the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Id.* at § 404.1520c(a); *see Linda M.*, 2022 WL 4125095, at *3. Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency. *Id.* at § 404.1520c(b)(2). The other factors are treatment relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim. *Id.*

at § 404.1520c(c). The Commissioner must articulate how persuasive he finds each of the opinions in the record and explain his conclusions with regard to the supportability and consistency factors. *Id.* at § 404.1520c(b)(2). The Commissioner may, but is not required to, articulate the consideration of the other factors, unless the Commissioner finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." *Id.* at § 404.1520c(b)(3). In these situations, the Commission must articulate consideration of the other factors as well.

As noted above, the ALJ found that Lea had the mental RFC to perform "simple and routine tasks, learned by rote and simple instructions, few work place changes, little judgment required, and simple and direct supervision, and no more than incidental contact with the general public, and occasional contact with coworkers and supervisors." (Tr. 23.) In making this mental RFC determination, the ALJ set forth the Plaintiff's testimony and discussed the treatment records and health examinations ranging from approximately 2004 through 2019 by multiple doctors. (Tr. 24-26.) As to SAMC Campa and the other SAMCs, the ALJ stated:

> The undersigned has fully considered the medical opinions and prior administrative medical findings. The State agency medical consultants' assessments are partially persuasive, because the evidence received at the hearing level fails to support that the claimant had a severe physical or mental impairment prior to the alleged onset date (Exhibits 1A and 4A). Nonetheless, given the claimant's history of mental health treatment and symptoms, the undersigned finds the limitations herein more appropriate.

(Tr. 26.)

In this case it appears (and the Commissioner agrees) that the ALJ did make several inaccurate statements in evaluating SAMC's opinions, including the reference to whether there was evidence prior to Lea's alleged onset date (as opposed to prior to Lea's date of last insured)

as well as that the SAMCs did not find that Lea had severe mental impairments. *See, e.g.,* Defendant's Brief at 9-11.) In addition, it is questionable whether the ALJ properly evaluated SAMC Campa's opinions under the supportability and consistency factors set forth in 20 C.F.R. § 404.1520c(b)(2). Thus, the issue becomes whether the ALJ's errors were harmless.

It is well-established that "[p]rocedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error "cast[s] into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). In this case, the Court finds that the ALJ's errors are harmless for several reasons. First, several of the errors appear to be more typographical errors or, in essence, a lack of attention to detail in drafting the opinion. *See, e.g., Dukes v. Colvin*, No. 3:14-CV-173-BF, 2015 WL 1442988, at *4 (N.D. Tex. Mar. 31, 2015) ("In the context of social security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent.") Regardless, it is clear that the ALJ did consider SAMC Campa's opinion and found it "partially persuasive" as the ALJ adopted portions of it in his decision. For instance, the ALJ, like SAMC Campa, found at Step Two, that Lea suffered from several severe impairments and, in evaluating the paragraph B criteria, that Lea was moderately limited in all four functional areas. (Tr. 22-23, 126-32.) In addition, the ALJ found that Lea's mental RFC was limited to, in essence, simple and routine tasks that required little judgment and limited contact with the general public, coworkers, and supervisors. (Tr. 23.) SAMC Campa had found similar limitations in his RFC assessment. (Tr. 129-32.) Because any error made by the ALJ in evaluating SAMC Campa's opinion does not cast into doubt the existence of substantial evidence to support the ALJ's decision, the Court finds that such error is harmless

and remand is not required. In this case, it is clear that the ALJ properly made his mental RFC determination after carefully analyzing all the medical opinion evidence in the record, including the opinions of the SAMCs.

### C. RFC Determination

In her brief, Lea also argues that the ALJ erred by improperly substituting his own opinion for that of the medical opinion evidence of record in making the RFC determination. (Pl.'s Br. at 20-25.) Specifically, citing to *Ripley, supra*, and several other cases, Lea states:

> As noted above, the ALJ found at step two of the sequential evaluation process that Lea's severe impairments prior to the expiration of her Title II insured status on March 31, 2013, including "affective disorder, anxiety disorder, and post-traumatic stress disorder (PTSD)." The ALJ also recognized that an impairment is severe when it has more than a minimal effect on an individual and would be expected to interfere with the ability to work. Thus, while recognizing that Lea's severe mental impairments . . . interfered with Lea's ability to work, the ALJ identified no medical source assessment of the effect of Lea's mental impairments on her ability to work that provided a basis for the mental RFC finding.
>
> The ALJ noted that the State agency psychological consultants concluded Lea did not have a severe mental impairment. According to the ALJ, the only medical source of record to assess the functional impact of Lea's medically determinable "severe" mental impairments . . . was Dr. Guerra-Watson. However, the ALJ found that Dr. Guerra-Watson's opinions on how Lea's "severe" mental impairments affected her ability to work were "not persuasive." Thus, the ALJ determined Lea's mental RFC without identifying an assessment from a medical source that clearly establishes the effect Lea's "severe" mental impairments had on her ability to work. The ALJ noted that "given the claimant's history of mental health treatment and symptoms, the undersigned finds the limitations herein more appropriate." Therefore, as acknowledged, he based his mental RFC finding upon his lay interpretation of the medical treatment reports of record and his own opinion about the effect of Lea's "severe" mental impairments on her ability to work. This was error.

(Pl.'s Br. at 21-22 (internal citations omitted).)

RFC is what an individual can still do despite his limitations.[5] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[6] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3-6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986

---

[5] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[6] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

In this case, the ALJ found, as stated above, that Lea had several severe mental impairments and had the mental RFC to perform "simple and routine tasks, learned by rote and simple instructions, few work place changes, little judgment required, and simple and direction supervision, and no more than incidental contact with the general public, and occasional contact with coworkers and supervisors." (Tr. 23.) In making this mental RFC determination, the ALJ analyzed the medical evidence in the record from several doctors, including Jonathan Cude, Ph.D., L.P.C.; Clark Stevens, Ph.D.; Diana Coxsey, M.D.; Antonia Guerra-Watson, Ph.D. ("Dr. Guerra - Watson"); Wasim Haque, M.D.; and the SAMCs.

Lea, citing to *Ripley, supra*, and other similar cases, argues that, in essence, the ALJ erred when he found that the SAMC's concluded that Lea did not have a severe mental impairment (and, thus, rejected their mental RFC determination) and found that Dr. Guerra-Watson's opinions on the effects Lea's impairments had on her ability to work were not persuasive. Lea claims that the ALJ's mental RFC determination was, as a result, not based on any other medical opinion in the record establishing Lea's mental RFC.

14

In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. 67 F.3d at 557. The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem[7] but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work.[8] *Id.* at 557–58. The Fifth Circuit rejected the injuries substantially supported the ALJ's conclusion because the Court was unable to determine the effects of the claimant's condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27.

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. § 404.1546(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez v. Barnhart,* 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005). Contrary to the facts in *Ripley*, there are, in this case, at least two doctors that provide opinions that assess at least some of the effects of Lea's functional physical impairments on her ability to work, several reports from Dr. Guerra-Watson (*see, e.g.* Tr. 363, 372-74, 915) and the Mental RFC Assessment from SAMC Campa dated June 15, 2018 (Tr. 109-32). While the ALJ found Dr. Guerra-Watson's opinions to be unpersuasive, the ALJ did find the SAMC's opinions "partially persuasive," even if, as discussed above, the ALJ's statements regarding the SAMCs' opinions contained some inaccuracies. In fact, as discussed in the preceding section, the ALJ appears to have relied on some

---

[7] "The evidence that was available for review by the ALJ shows a four year history of surgery, medical examinations, and complaints of pain" as well as the claimant's testimony. *Id.*

[8] "While *Ripley* itself remains precedent, its emphasis on treating physicians' opinions no longer holds sway." *Vasquez v. Comm'r of Soc. Sec.,* No. 7:21-cv-00028-BP, 2022 WL 2975471, at *4 (June 30, 2022) (citing *Webster v. Kijakazi,* 19 F.4th 715, 718-19 (5th Cir. 2021) (discussing 20 C.F.R. §404.1520c)).

of SAMC Campa's opinions regarding Lea's RFC in making his own RFC determination. Consequently, in this case, the ALJ's RFC determination was supported by at least one medical opinion and is grounded in substantial record evidence.

The ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See, e.g., Muse*, 925 F.2d at 790. Because there is substantial evidence in the record that supports the ALJ's RFC determination, remand is not required as to this issue.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d

1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **February 9, 2023** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 26, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv